N. L. Industries Incorporated, Petitioner *v.* Workmen's Compensation Appeal Board (Henry), Respondents.

Argued April 7, 1983, before President Judge Crumlish, Jr. and Judges Williams, Jr. and Barbieri, sitting as a panel of three.

*Susan McLaughlin,* with her *David L. Pennington, Harvey, Pennington, Herting & Renneisen, Ltd.,* for petitioner.

*Alan L. Phillips, Markowitz & Richman,* for respondent, James Henry.

OPINION BY JUDGE BARBIERI, May 25, 1983:

The sole question raised for our consideration in this workmen's compensation proceeding, is whether or not there was adequate notice of lead poisoning within the meaning of Section 311 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §631.

Claimant was employed by National Lead Industries, Inc., for fifteen years in a lead hazard, with a total employment with that company of twenty years. On November 17, 1975, he reported to the company dispensary with complaints, including a swollen knee, and was there seen by the company physician who directed him to consult his family doctor, who later referred him to a specialist in internal medicine and hematology. He was hospitalized for his condition, diagnosed as lead intoxication, and continues to be disabled therefrom to the present time. He was hospitalized for confirmatory studies from March 4, 1976 through March 13, 1976, under the care of Dr. Manfred I. Goldwein, an expert witness who gave an unequivocal medical opinion that claimant had contracted his disabling lead poisoning as a result of his

exposure to lead while in the employ of the Petitioner. This testimony was accepted by the referee in his findings. The question of notice was not directly addressed before the referee during the many hearings which were listed, most of which were without the taking of testimony. The record is devoid of any direct testimony of notice formally given in writing or orally, but claimant contends that notice was timely, within the 120 days period, since the hospitalization studies were required to determine the true state of claimant's lead intoxication and occupational disease disability and that this was not known in order to be communicated to the employer until March 4, 1976, and the employer indicated its knowledge of the nature of claimant's disability and its work related character as of April 16, 1976, by issuing to the claimant a "Notice of Compensation Denial" regarding an alleged occupational exposure to lead hazard and consequent disability.[1] Thus, claimant argues, "the employer knew of claimant's injury well within the 120 days from the date that the claimant first knew or should have known of the existence of the injury and its possible relationship to work." Unfortunately for claimant, even if his contentions which are factual, could be accepted by this Court, we are unable to find evidence of the "Notice of Compensation Denial," nor has claimant directed us to any place in the record where this document or testimony as to its existence can be found.

As indicated, the referee made no finding as to notice and when the issue was raised before the Board, it was dismissed with the simple statement that "notice is a question of fact for the referee."

---

[1] Quoted from opening sentence in paragraph marked "RECORD" in Referee's Decision of March 26, 1979, although not included in the record available to us.

Reference to the record reveals the existence of so many opportunities and possibilities for notice or knowledge to have been brought home to the employer that it is quite likely that the referee simply took notice for granted, especially since this issue apparently was not raised before him. Examples of possible lost opportunities to establish the notice or knowledge required, include claimant's visit to the company physician in the company's dispensary on the last day of claimant's employment November 17, 1975. We have no knowledge whether an examination was made, whether the company doctor or other dispensary personnel were aware of the nature of claimant's condition, or, in fact, why the plant physician employed to examine and attend medically to personnel employed in a known lead hazard occupation would not have made an examination or reached some conclusion concerning the nature of claimant's ailments. It may well be that one employed to exercise his medical skills in such a plant, who fails to carry out the mission of his occupation, is thereby charged with the knowledge that would have been his should the examination have been made. Also, it was brought out by the testimony of Dr. Philip Spergel, a rehabilitation psychologist, called by the Petitioner, that blood studies were performed in February of 1976, at the company dispensary, when claimant attempted to return to work. Knowledge of the condition, of course, in February of 1976, would have been well within the 120 days period.

To our knowledge, none of the documentation, dispensary records, hospital records or medical records of physicians involved with the claimant have been included in the record of this case. In fact, the referee specifically ruled out three records marked for identification, apparently the reports of three physi-

cians involved with claimant's medical care, on the ground that these were inadmissible. While inadmissible, perhaps, for proof of their contents, it is possible that such documents could be admissible if their contents were communicated to the employer, for the purpose of establishing notice.

Our comments here go simply to demonstrate that the existence or non-existence of notice or knowledge as an issue in this case could readily have been, and may be, resolved at the referee level. Since this case has been in litigation since 1976, it is most regrettable that these opportunities went begging. Also, there could be further clarification in the record and, possibly, a finding on claimant's alternate contention that he was not aware of his condition until March of 1976 and that, therefore, the notice period in Section 311 did not begin to run until that date, *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 74, 407 A.2d 117 (1979), so that even the notice provided by filing the claim petition on June 10, 1976, would have been in time to satisfy the requirements of Section 311.

Since all this leads us to the conclusion that the ultimate factual disposition of this question must remain for the referee, with deep regret, we must remand.

On the remand, as requested by claimant, the allocation of counsel fees between present counsel and claimant's prior one can be addressed and an appropriate order entered by the referee on what appears to be an amicable solution reached by the successive attorneys.

ORDER

AND Now, this 25th day of May, 1983, the decision of the referee and the affirmance thereof by the Work-

men's Compensation Appeal Board are reversed and this case is remanded for further hearing and proceedings before the referee on questions as to notice under Section 311 of the Act and as to allocation of counsel fees, consistent with this opinion. Jurisdiction relinquished.